UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KAREN COLLINS,

       Plaintiff,

  v.                                       17-CV-467
                                               DECISION & ORDER
NANCY BERRYHILL, COMMISSIONER
OF SOCIAL SECEURITY,

       Defendant.

---

On May 26, 2017, the plaintiff, Karen Collins, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On December 18, 2017, Collins moved for judgment on the pleadings, Docket Item 10; on May 3, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 16; and on May 24, 2018, the plaintiff replied.

For the reasons stated below, this Court grants Collins's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.    PROCEDURAL HISTORY

On April 18, 2013, Collins applied for Supplemental Security Income benefits. Docket Item 6 at 200. She claimed that she had been disabled since June 25, 2009, due to a back injury, asthma, brainswelling, low red and white blood cells, anxiety, two

bulged discs in her back, a tear in her spine, nerve damage in both legs, carpel tunnel syndrome, bacteria in her stomach, allergies, and migraine headaches. *Id.* at 220.

On August 19, 2013, Collins received notice that her application was denied because she was not disabled under the Act. *Id.* at 136. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 152, which was held on June 25, 2015, *id.* at 15. The ALJ then issued a decision on October 28, 2015, confirming the finding that Collins was not disabled. *Id.* at 30. Collins appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5.

## II.     RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Collins's objection. Collins was examined by several different providers but two, Stanley Michalski, M.D., and Sherry Withiam-Leitch, M.D., are of most significance to the claim of disability here.

### A.     Stanley Michalski, M.D.

Stanley Michalski, M.D., is Collins's primary care physician who wrote several notes about his treatment of Collins in 2014. *See* Docket Item 6 at 380-87. Dr. Michalski completed a medical treating source statement for Collins's disability application on October 17, 2014. *Id.* at 388-91. In that statement, Dr. Michalski opined that Collins suffered "pain in the low back when standing or walking too long" and "muscle spasms in the low back." *Id.* at 388-89. He also opined about various limitations in Collins's ability to sit, stand, or walk in an 8-hour work day. *Id.* Dr. Michalski identified "impaired forward flexion of the lumbar spine and tenderness in the

2

low back" as the "clinical findings and objective signs" supporting those limitations. *Id.* at 388.

### B. Sherry Withiam-Leitch, M.D.

Sherry Withiam-Leitch, M.D., is a neurologist who began treating Collins in 2007 and continued treating her through 2015. *Id.* at 609-28. Dr. Withiam-Leitch wrote that Collins had abnormal physical findings with respect to her back, including positive signs for lumbar spine tenderness and spasm, on at least ten of those occasions. *Id.* On December 10, 2014, Dr. Withiam-Leitch completed a medical source statement on the nature and severity of Collins's impairments and opined that since 2006 Collins has been capable of performing neither sedentary work nor light work. *Id.* at 397-99.

### III. THE ALJ'S DECISION

In denying Collins's application, the ALJ evaluated Collins's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the

3

claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one the ALJ found that Collins was not engaged in substantial gainful activity. Docket Item 6 at 17. At step two, the ALJ determined that Collins had several severe impairments: "herniated lumbar discs at L2-3, L4-5 and L5-S1, with pinched neuroforamina on the left at L3-4 and L4-5, chronic bronchitis/asthma, migraine

headaches, anxiety disorder, not otherwise specified, and dysthymic disorder." *Id.* At step three, the ALJ found that these impairments did not, singly or in combination, meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 19. At step four, the ALJ found the following RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . except the claimant: cannot work around hazards such as unprotected heights or moving mechanical parts; can occasionally climb ramps and stairs, kneel, crouch and crawl; cannot climb ladders, ropes or scaffolds; must avoid concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas, and other respiratory irritants; can understand, remember and carry out simple, one and two-step instructions and tasks; cannot perform supervisory duties; and can have frequent interaction with supervisors and occasional interaction with co-workers and the general public.

*Id.* at 21. Finally, at step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Collins could perform with her RFC. *Id.* at 29.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d

108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I.  ALLEGATIONS

Collins objects to the ALJ's RFC determination. Docket Item 10-1 at 21. She specifically argues that the ALJ erred by assigning little weight to the opinions of several treating physicians.[1]  *Id.*

### II.  ANALYSIS

When determining a plaintiff's RFC, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). A medical opinion is a statement from an acceptable medical source that "reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including [] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

---

[1] Because the Court finds that the ALJ's error in addressing opinion evidence warrants remand, and because remand may well address the other errors that Collins raises, this order will not address the other alleged errors.

6

When a medical opinion from a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the opinion is given controlling weight. 20 C.F.R. § 404.1527(c)(2). If an ALJ does not give a treating source opinion controlling weight, the ALJ must consider several factors when deciding the weight to give that opinion, including the examining relationship, the extent and nature of the treatment relationship, the length of the treatment relationship, whether the medical opinion is supported by medical signs and laboratory findings, the opinion's consistency with the record as a whole, the opinion source's specialization, and other factors the claimant brings to the ALJ's attention. 20 C.F.R. § 404.1527(c)(1)-(6). When the ALJ does not rely on these "good reasons" for the weight given to the treating source opinions, remand is required. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion . . . .").

In weighing the evidence, the ALJ also must make specific findings and "conduct a distinct analysis that would permit adequate review on appeal." *Aung Winn v. Colvin*, 541 Fed. Appx. 67, 70 (2d Cir. 2013) (quoting *Kohler v. Astrue*, 546 F.3d 260 (2d Cir. 2008)) (summary order). A misstatement of fact in the ALJ's decision is material when it prevents the reviewing court from following the adjudicator's reasoning. *Compare Boughton v. Astrue*, 2013 WL 209649, at *12 (W.D.N.Y. Jan. 17, 2013) ("[T]here is nothing in the record indicating whether plaintiff was a 'full-time' student or 'part-time' student. The ALJ, however, accurately recounted plaintiff's testimony as to the time she spent in school. Therefore, the ALJ made no material misstatements of fact.") *with Goss*

7

*v. Astrue*, 2014 WL 888497, at *10 (M.D. Pa. Mar. 6, 2014) (ALJ's "error, which conflates daily and monthly pain medication use, is highly material when examined in the context of evaluating the credibility of the Plaintiff's reported symptoms of pain . . . and undermines confidence in the outcome."). When an "ALJ's statement is unsupported and inaccurate," it may be "impossible for the Court to conduct a review for substantial evidence." *Bell v. Comm'r of Soc. Sec.*, 2016 WL 4473467, at *5 (M.D. Fla. Aug. 8, 2016).

Here, the ALJ gave little weight to Dr. Michalski's treating source opinion "because it is offered without reference to any supporting findings or signs to substantiate the opinion, and it is at odds with the record as a whole." Docket Item 6 at 28. While those may be sufficient reasons not to give a treating source opinion controlling weight, that statement misrepresents the record. Dr. Michalski did, in fact, reference "supporting findings or signs," *id.*, to support his opinion: specifically, "impaired forward flexion of the lumbar spine and tenderness in the low back." *Id.* at 388. What is more, Dr. Michalski's treatment records reflect those very findings and signs. *See, e.g.*, *id.* at 387 ("Low back [range of motion] is restricted and she is tender in the low back."). Dr. Michalski reviewed an MRI of Collins's lumbar spine, which further supported his opinion. *Id.* at 382. And Dr. Michalski also diagnosed herniated discs at L4 through L5-S1, as well as pinched neuroforamina at L3-L4 and L4-L5. *See id.* at 388. Simply put, the ALJ's statement that Dr. Michalski did not reference "supporting findings or signs," *id.* at 28, to support his opinion is "unsupported and inaccurate," and thus it is "impossible for the Court to conduct a review for substantial evidence." *Bell*, 2016 WL 4473467, at *5.

Moreover, if the results of Dr. Michaleski's examinations do not, in fact, support his medical opinion, that determination must come from a medical source interpreting how those results relate to Collins's ability to work. *See McBrayer v. Sec'y. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."); *Fuller v. Astrue*, 2010 WL 3516935, at *5 (W.D.N.Y. Sep. 7, 2010) ("[A]n ALJ is not free to substitute his own lay opinion for opinions from treating sources."). In other words, there is nothing inherent in Dr. Michalski's findings that is necessarily inconsistent with his opinion. So if the ALJ suspected that Dr. Michalski's examination findings did not support his opinion, the ALJ was required at the very least to contact Dr. Michalski in this regard. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("In light of the ALJ's affirmative duty to develop the administrative record, 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'").

The same is true of the "little weight," Docket Item 6 at 28, that the ALJ assigned to Dr. Withiam-Leitch's medical opinion. The ALJ discounted that opinion because "it does not include any explanation for the conclusion or any reference at all to any specific findings or signs that support the conclusion that the claimant is unable to engage in even sedentary work." Docket Item 6 at 28. The ALJ is correct that Dr. Withiam-Leitch did not explicitly reference findings and signs that support her opinion. *See id.* at 399. But the fact that a physician left her opinion unexplained on a form does not mean that it is not "well supported by medically acceptable clinical and laboratory diagnostic techniques" and thus not entitled to controlling weight. 20 C.F.R.

9

§ 404.1527(c)(2). Nor does it mean that her opinion is unsupported by medical signs and laboratory findings. 20 C.F.R. § 404.1527(c)(1)-(6).

What is more, Dr. Withiam-Leitch's treatment notes indeed include several years of positive findings for back problems. *Id.* at 609-28. If the ALJ suspected that Dr. Withiam-Leitch's examination findings did not support her opinion, the ALJ was required at the very least to contact Dr. Withiam-Leitch in this regard. *See Burgess*, 537 F.3d 117, 129 (2d Cir. 2008); *see Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *Mecklenburg v. Astrue*, 2009 WL 4042939, at *6 (W.D.N.Y. 2009) (when doctor "opined that the plaintiff was totally disabled [but] the ALJ stated that [the treating physician] did not identify specific and objective clinical findings that supported his finding of disability," the ALJ had a duty to develop the record) (quotations of the administrative record omitted).

Because the ALJ misstated Dr. Michalski's reference to findings supporting his opinion, and because the ALJ failed to recontact Dr. Michalski and Dr. Withiam-Leitch for further explanation of their opinions, the ALJ lacked "good reasons" for the weight assigned to these treating source opinions. *Halloran*, 362 F.3d at 33. Therefore, remand is required for the ALJ to accurately address the medical record, recontact the treating physicians, and explain the weight given to their opinions.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 16, is DENIED, and Collins's motion for judgment on the pleadings, Docket Item 10, is GRANTED in part and DENIED in part. The decision of

the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: May 28, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE